IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| HIEP DO AND JULIE DO, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. 9:05CV238 |
| v. | § | |
| | § | |
| PILGRIM'S PRIDE CORP., FARMERS | § | JUDGE THAD HEARTFIELD |
| STATE BANK, WILLIAM BRIMHALL | § | |
| d/b/a BRIMHALL APPRAISAL SERVICES, | § | |
| PROFESSIONAL TITLE SERVICES, INC., | § | |
| ALEXANDER HUNGNGOC | § | |
| NGUYENLIEN, LOUIS TRUONG a/k/a | § | |
| LUAN TRUONG, TRUONG TRUONG, | § | |
| ADAM TRUONG, ALAN TRUONG | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Before the court are Defendants' Motions to Dismiss [Docs. # 24, 25, 26, and 28].  Each

Defendant separately moved to dismiss Plaintiffs' Racketeering Influence and Corrupt

Organization Act, 18 U.S.C. § 1961 et seq. ("RICO"), claims and all of Plaintiffs' state law

claims.  Defendant Pilgrim's Pride Corporation ("PPC") and Defendant Farmers State Bank

("FSB") motions raise the same issues.  Defendants Alexander Hungngoc Nguyenlien, Louis

Truong (a/k/a Luan Truong), Truong Truong (a/k/a Alan Truong), and Adam Truong ("the

Truong Defendants") submitted a motion stating the claims against them should be dismissed for

substantially the same reasons as stated in  PPC's motion.  Defendant Brimhall's motion consists

of one page stating that no claim was made against him.  Because a claim for relief was properly

stated against Brimhall, this motion is denied.  The court will address the remaining motions

1

together.

Defendants PPC and FSB move to dismiss this case under Fed. R. Civ. P. 12(b)(1), 12(b)(6), 9(b), 8(a) and 8(e).  Plaintiffs have stated a claim upon which relief can be granted under RICO and, given the nature of the claims, the pleadings are sufficiently clear.  Because it is not disputed that federal question jurisdiction is proper under the RICO statutes, the court concludes that jurisdiction is also proper.  The motions before the Court raise issues that may be properly considered at the summary judgment stage.  The court, therefore, will not dismiss the entire case at this time.  The court will only dismiss Plaintiff Julie Do's claim for breach of contract.  All other claims will go forward and be addressed at the next round of briefing in this matter.

## I. Factual Background

Plaintiffs lived in Georgia and raised chickens.  After seeing an advertisement promoting the sale of a chicken farm in Timpson, Texas, Plaintiffs moved to Texas to purchase the farm, which was called "Timberlake Farm."  The Truong Defendants owned the farm at that time.  Pilgrim's Pride Corporation ("PPC") was the poultry processor who had contracted with the Truongs to supply the farm with the chickens and other materials necessary for raising chickens.  Plaintiffs state that without the contracts with PPC the farm would be worthless.  According to Plaintiffs, in order to keep the contracts, PPC insisted that the prospective buyer work exclusively with Farmers State Bank ("FSB") to arrange financing and appriasing.  William Brimhall was the appraiser that PPC and FSB allegedly required Plaintiffs to use.

Plaintiffs state that each of these entities and individuals made misrepresentations to convince the Plaintiffs to buy the farm at an inflated price.  Based upon these representations, on

September 1, 2004, Plaintiffs entered into a contract requiring a $336,500 down payment and a mortgage of $1,220,000.  After signing the contract, Plaintiffs allege that PPC told Plaintiffs to make a multitude of capital improvements or it would cancel the contracts.  After a series of improvements were made (around $100,000 was spent by the Dos), PPC cancelled some of the contracts on October 13, 2004 and all of the contracts on January 14, 2005.  Once the contracts were cancelled, Plaintiffs could not make their mortgage payments, and on November 1, 2005 FSB foreclosed on the property at a substantially reduced price.  Based on these events, Plaintiffs alleged the following scheme:

(1) Advertise farm with promises of long term contracts by PPC.  Require the buyer to use specific bankers and appraisers who will confirm a grossly inflated price for the property;

(2) Reward the Bankers and Appraisers with a steady stream of farmers selling and buying Pilgrim's Pride farms – they will get appraisal costs, and closing costs;

(3) Arbitrarily demand and extract capital improvements from the farmers until you get all you can out of them;

(4) Terminate the contract with the farmer, rendering the farm worthless;

(5) Once the farmer is in this position, give him the option to participate in the scheme (allegedly what the Truongs did) or foreclose on the house at a lower price; and

(6) Return to step one.

*See* Pls. RICO Case Statement p. 6.

In their Second Amended Complaint, Plaintiffs alleged (1) RICO violations, (2) Fraud, fraud in the inducement, and constructive fraud, (3) Breach of contract, (4) Economic Duress, (5)

Unjust Enrichment, (6) Constructive Trust, (7) Breach of fiduciary duty, (8) Conversion, and (9)

Tortious Interference with a contract.[1]  Defendants central contention is that the case should be

dismissed because Plaintiffs have failed to state a claim upon which relief can be granted on any

of these claims.

## II. Standard of Review

Fed. R. Civ. P 12(b)(6) provides that a party may move a court to dismiss an action for

"failure to state a claim upon which relief can be granted."  On motion under Fed. R. Civ. P

12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to

some legal remedy.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Unless a Fed. R. Civ. P

12(b)(6) motion is converted to a summary judgment motion, the court *may not* consider material

outside the complaint.  *See Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981) (emphasis

added).  The court must accept as true all well pleaded facts and review them in the light most

favorable to the plaintiff.  *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995).  A

pleading "need not specify in exact detail every possible theory of recovery--it must only 'give

the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"

*Thrift v. Estate of Hubbard,* 44 F.3d 348, 356 (5th Cir.1995) (quoting *Conley,* 355 U.S. at 47).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."  *Conley,* 355 U.S. at 45-46.  "The motion to dismiss for failure to state a claim is

viewed with disfavor and is rarely granted."  5A Charles A. Wright & Arthur R. Miller, Fed.

---

[1]There was some confusion regarding whether or not Plaintiffs pled "waiver" as a claim. Plaintiff's response to PPC's motion makes clear that this was not a claim and was only pled as a defense to any claims raised by PPC.

4

Prac. & Proc. § 1357 (2d ed. 1990).

## III. Analysis

## A. RICO Claims

Plaintiffs allege that Defendants PPC and FSB violated 18 U.S.C. § 1962(c), and that

FSB, the Truong Defendants, and Brimhall violated 18 U.S.C. § 1962(d).[2] Under both

subsections, RICO claims require "(1) a person who engages in (2) a pattern of racketeering

activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *In

re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993). PPC and FSB, in which the Truong

Defendants join, argue that Plaintiffs failed to properly plead each of these elements.

### 1. RICO Person

A "person" is defined broadly by the RICO statute to include "any individual or entity

capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The Fifth

Circuit, however, has stated that "the RICO person must be one that either poses or has posed a

continuous theat of engaging in acts of racketeering." *Crowe v. Henry*, 434 F.3d 198, 204 (5th

Cir. 1995). In "most cases, pleading the existence of a 'pattern of racketeering activity' will

supply this element of continuity to the RICO person." *Delta Truck & Tractor, Inc. v. J.I. Care

Co.*, 855 F.2d 241, 242 (5th Cir. 1988).

All of the Defendants are capable of holding legal or beneficial interest in property and

so they satisfy the statutory definition. For the reasons stated below, the court finds that the

---

[2]Under 18 U.S.C. § 1962(c), it is unlawful for a person employed by or associated with
an enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity.
Under 18 U.S.C. § 1962(d), it is unlawful for a person to conspire to violate Sections 1962(a)-
(c).

Defendants' actions, as alleged, also meet the continuity requirement imposed by the Fifth

Circuit.  *See Crowe*, 434 F.3d at 204.

<u>2. Pattern of Racketeering</u>

A "pattern of racketeering activity" requires at least two acts of racketeering activity

within a ten year period.  It is not disputed that Plaintiffs properly pled more than two acts of

mail fraud, wire fraud, and extortion.  These are racketeering activities.  To allege a "pattern of

racketeering activity," a plaintiff must also be able to show "that the racketeering predicates are

related, *and* that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v.*

*Northwestern Bell Telephone Co.*, 429 U.S. 229, 239 (1989) (emphasis in original); *see Delta*

*Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988).  The pattern

requirement does not require proof of multiple schemes, although multiple schemes are relevant

to establishing continuity.  *H.J. Inc.*, 492 U.S. at 240-41.

The Supreme Court recognized the difficulty in the continuity element and has stated two

examples of how a party can show continuity.  *H.J. Inc.*, 492 U.S. at 241.  First, a party may

show a closed period of racketeering conduct, stated differently, "a series of related predicates

extending over a substantial period of time."  *Id.* at 242.  To satisfy the closed period, the

predicate acts should be more than a few weeks or months.  *Id.*  Long term criminal conduct was

the concern of Congress when it enacted RICO.  *Id.*

Second, a party can show an open-ended period of racketeering conduct, which threatens

continued racketeering activity.  *H.J. Inc.*, 492 U.S. at 242.  One method of establishing the

open-ended period is for Plaintiffs to show that the racketeering predicates are a regular way of

conducting defendants' ongoing legitimate businesses.  *Id.* at 243.  Another method is by

showing the specific predicate acts threaten repetition extending indefinitely.  *Id.* at 242.

"[W]here the alleged RICO predicate acts are part and parcel of a single, otherwise *lawful*

transaction, a 'pattern of racketeering activity' has not been shown."  *Word of Faith World*

*Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996) (emphasis added).  However,

where the RICO predicate acts are part of an enterprise engaged in ongoing criminal activity,

with multiple players and multiple levels, the "pattern of a racketeering activity" requirement is

met.  *U.S. v. Posada-Rios*, 158 F.3d 832, 855-58 (5th Cir. 1998) (analyzing the "La Compania"

crime syndicate under RICO).

　　　At this stage, the Court must concern itself with what Plaintiffs allege.  The Plaintiffs

allege an open-ended scheme meant to go into the future for an indefinite period of time.

Plaintiffs have alleged a six step scheme to inflate property prices, extort money from the farm

owners, and commit mail and wire fraud, which they allege threaten repetition.  Plaintiffs cite to

two other potential cases involving other individual farmers and the same type of scheme in East

Texas.  Plaintiffs allege that these actions are done in the regular course of Defendants' business,

and that the actions threaten repetition.  The Court, at this stage, may not concern itself with the

veracity of these claims without converting these motions into *Motions for Summary Judgment.*

 The Court declines to do so.  Accepting the pleadings as true, the racketeering predicates appear

to allege a regular way of conducting Defendants' legitimate business.  The pleadings also allege

that there is a threat of the predicate acts being repeated.

　　　Defendants argue that the predicate acts are part of only a single, otherwise lawful

transaction.  This may or may not be the actual facts existing in reality.  This argument, however,

ignores what Plaintiffs have actually stated in their pleadings.  Plaintiffs have pled facts that, if

true, would show both that the predicate acts threaten repetition and that the racketeering predicates are part of Defendants' business. At this stage, as a matter of law, the court cannot conclude that Plaintiff have failed to state a claim upon which relief can be granted.

3. Enterprise

"A plaintiff asserting a RICO claim must allege the existence of an enterprise." *Crowe*, 43 F.3d at 204. The statute defines an "enterprise" to include "an individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise may either be a legal entity or an association-in-fact. *Crowe*, 43 F.3d at 204.

Plaintiffs have alleged an association-in-fact. An association-in-fact must: (1) have an existence separate and apart from the pattern of racketeering (2) be an ongoing organization and (3) function as a continuing unit as shown by a hierarchical or consensual decision making structure. *Crowe*, 43 F.3d at 205. Defendants argue that Plaintiffs failed to properly plead the first two elements.

*a. Existence apart from pattern of racketeering*

Plaintiffs state that the enterprise exists beyond the mere commission of the predicate acts because the enterprise joined together not only to defraud the Plaintiffs, but to also engage in the financing and production of poultry on the Timberlake Farms. Prior to the Truongs selling the farm to the Plaintiffs, the Truongs financed their acquisition of Timberlake Farms by securing a mortgage with FSB, the appraisal was done by Brimhall, and PPC provided contracts to the Truongs. The enterprise, then, existed at that point for the purpose of the financing and production of poultry. The Defendants' disagreement again appears to be with the facts that

8

Plaintiffs have alleged.

*b. Ongoing Organization*

Defendants argue that the Do's allegation of enterprise continuity is too general and conclusory to state a claim upon which relief can be granted. Plaintiffs have specifically alleged how the organization operates and how it will continue to operate in the future. The complaint alleges more than wrongful conduct in regard to the sale of the Timberlake Farm. Plaintiffs claim that the allegedly wrongful conduct is repeated each time that a farm -- as well as other East Texas farms -- are sold. It may turn out that there is no evidence to support these contentions. However, at this stage, the Court must accept the pleadings as true.

**B. State law Claims**

<u>1. Fraud, Constructive Fraud, and Fraud in the Inducement</u>

Defendants FSB and PPC, in which the Truong Defendants join, allege that Plaintiffs failed to plead their fraud claims with particularity as required under Fed. R. Civ. P. 9(b). "Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the representation and what [that person] obtained thereby.'" *Tel-Phonic Servs. Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (*quoting* 5C Wright & A. Miller, Fed. Prac. and Proc. § 1297 (2d ed. 1990)).

*a. Fraud and Fraud in the Inducement*

Defendant PPC and FSB submitted a chart detailing Plaintiff's allegations and what Defendants allege is missing information.[3] Defendants, however, are looking at the pleadings in

---

[3]In Texas, "[t]he elements of actionable fraud are . . . : (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4)

a series of isolated statements, rather than as a continuous document.  When viewed as a whole,
Plaintiff's pleadings meet the requisite level of specificity.[4]

In the Section labeled "Fraud, Constructive Fraud, and Fraud in the Inducement,"
Plaintiffs specifically pled what misrepresentations were made by each party, the content of the
misrepresentations, and the time when they were made.  *See* Pls. Second Amended Compl. ¶¶
148-152.  The place of the misrepresentations is evident from reading the complaint as a whole
in conjunction with the fraud section.  Given the detailed nature of the allegations and the
specifics stated in the complaint, the court concludes that Plaintiffs properly plead these claims
under Rule 9(b).

Defendants also allege that any allegations of non-disclosure fail to state a claim upon
which relief can be granted because there is no fiduciary relationship between Plaintiffs and
Defendants PPC and FSB.  "As a general rule, a failure to disclose information does not
constitute fraud unless there is a duty to disclose the information."  *Bradford v. Vento*, 48

---

the speaker made the representation with the intent that it should be acted upon by the party; (5)
the party acted in reliance upon the representation; and (6) the party thereby suffered injury."
*Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990).  Fraud in the
inducement is a "particular species of fraud that arises only in the context of a contract and
requires the existence of a contract as part of its proof."  *Haase v. Glazner*, 62 S.W.3d 795, 798
(Tex. 2001).

[4]An example is in ¶ 152(I) of Plaintiff's Second Amended Complaint.  Defendant
highlights the statement "Misrepresentations . . . regarding the condition, value and profitability
of the farm," and states that the time, place, and content requirement is not met.  ¶ 152(I) is
entitled "Pilgrim's Pride" and reads "Misrepresentations by Pilgrim's Pride regarding the
condition, value, and profitability of the farm.  Before the transaction, the fact that the farm was
'on the verge of being shut down' was hidden and was divulged only after the contracts were
executed. . . ."  Earlier in the complaint, Plaintiffs detailed how Randy Ward acting for PPC
made these representations and where he was when he made them.  When read in conjunction
with the rest of the paragraph and the pleading as a whole, the content, the time and the place of
the alleged statements are sufficiently clear.

S.W.3d 749, 755 (Tex. 2001). Silence, however, may be equivalent to a false representation when the particular circumstances impose a duty on the party to speak. *Id.* "Several courts of appeals have held that a general duty to disclose information may arise in an arm's length business transaction when a party makes a partial disclosure, that, although true, conveys a false impression." *Id.* A duty to disclose, then, may arise in an arm's length transaction and so this court cannot conclude that a fiduciary relationship is required as a matter of law for Plaintiff's fraud and fraud in the inducement claims. Moreover, as noted below, a fiduciary relationship between Plaintiffs and PPC and FSB could have existed.

### b. Constructive Fraud

Constructive fraud, on the other hand, does require "a fiduciary relationship between the parties." *American Medical Intern., Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App.– Hous. [14th Dist.] 1991). A fiduciary relationship exists where the parties are under a duty to act or give advice for the benefit of another on matters within the scope of the relation. *Id.* "The relationship need not be formal; however, absent the demonstration of a formal fiduciary relationship, the evidence must show that the dealings between the parties continued for such a time that one party is justified in relying on the other to act in his best interest." *Id.* Defendants argue that no formal fiduciary relationship exists.

Plaintiffs' pleadings discuss the close relationship between the parties, and the continued nature of the dealings. While a formal fiduciary relationship may not exist, it is possible that Plaintiff could still show a fiduciary relationship. Plaintiffs pled that there were as many as 15 meetings and nearly 150 phone calls between FSB, PPC, and Plaintiffs. Based upon the number of calls and the length of time of the relationship, viewing the evidence in the light most

11

favorable to Plaintiffs, Plaintiffs could be justified in relying on FSB and PPC to act in Plaintiffs'

best interest.  As to Defendants Brimhall and the Troung Defendants, the Court is of the opinion

that the lack of existence of a constructive fraud claim by Plaintiffs against these Defendants will

be more properly taken up at the Summary Judgment stage.

### 2. Breach of Contract

#### a. Elements

Plaintiffs only allege a breach of contract claim against PPC.  Under Texas law, the

elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance

by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

plaintiff as a result of the breach."  *Sport Supply Group, Inc. v. Columbia Cas. Co.*,335 F.3d 453,

465 (5th Cir. 2003).   Plaintiffs properly pled each of these elements in the complaint.  Plaintiffs

allege that they entered into contracts with PPC, that they performed pursuant to these contracts,

that Defendant breached these contracts by improperly cancelling them when Plaintiffs were in

full compliance and that they sustained damages as a result of these actions.  Defendants'

arguments focus on whether or not what Plaintiffs alleged is true.  At this stage, the court must

accept the allegations alleged as true.  The court will not dismiss this claim.

#### b. Standing of Julie Do

Defendant PPC argues that Julie Do lacks standing to bring a contract claim.[5]  Plaintiffs

---

[5] Defendant PPC's motion and reply brief focus on the issue of standing in regard to the breach of contract claim.  To the extent that PPC has alleged generally that she has no standing to bring any claim and that her claims should be dismissed under Fed. R. Civ. P. 12(b)(1), Plaintiffs' complaint details how Julie Do suffered monetary damages from PPC's activities when the farm, on which she had co-signed the loan was foreclosed because of PPC's allegedly improper acts, including fraud, mail fraud, extortion, etc. The court finds that she has standing to bring all of her other claims.

claim that Ms. Do was a third party beneficiary and so she has standing to bring the contract

claim.  "In general, only the parties to a contract have the right to complain of a breach thereof."

*Copeland v. Alsobrook*, 3 S.W.3d 598, 608 (Tex.App.– San Antonio, 1999,  pet. denied).  "A

well defined exception to the general rule is that one who is not in privity to the written contract

may demonstrate that the contracting parties intended that he benefit by it . . . ."  *Bruner v. Exxon

Co., U.S.A.*, 752 S.W.2d 679, 682 (Tex.App. – Dallas 1988, writ denied).  There are three

recognized types of third party beneficiaries: donee beneficiaries, creditor beneficiaries, and

incidental beneficiaries.  *Id.* at 683.  Only the first two may enforce contracts to which they are

not a party.  *Id.* at 683.  Plaintiffs did not plead that Julie Do was a donee beneficiary or a

creditor beneficiary and there is nothing in the complaint to suggest that she was more than an

incidental beneficiary to the contracts between PPC and Hiep Do.  The court concludes that she

does not have standing to bring a breach of contract claim against PPC.  Julie Do's breach of

contract claim is dismissed.

### 3. Economic Duress

Plaintiffs allege that Defendants PPC and FSB utilized economic duress to achieve

capital improvements to the farm.  Economic duress consists of: (1) a threat to do something a

party has no legal right to do, (2) an illegal exaction or some fraud or deception, and (3) an

imminent restraint that destroys the victim's free agency and leaves him without a present means

for production.  *Wright v. Sydow*, 173 S.W.3d 534, 544 (Tex.App. – Houston [14 Dist.] 2004,

pet. denied).

Plaintiffs pled that Defendants "used the threats of financial ruin to facilitate repair and

replace equipment until it appeared to the Defendants that Plaintiffs had reached their investment

limit." Pls. Second Ameded Compl. ¶ 164. Defendants argue that a claim for economic duress cannot be maintained because all that was threatened was the cancellation of a contract. The pleading, however, is not solely limited to the issue of the threat of a cancelled contract. Plaintiffs allege that Defendants threatened total financial ruin, in addition to the cancellation of the contract. The question, once again, is not whether Plaintiffs can prevail on this theory, but only whether it has been properly alleged. Given that Plaintiffs pled more than just the threat of cancelling a contract, the court will not dismiss this cause of action.

### 4. Unjust Enrichment

Plaintiffs allege a claim for unjust enrichment against PPC, FSB, and the Truong Defendants. "Unjust enrichment claims are based on quasi contract." *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000). "When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff." *Burlington Northern R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App. – Texarkana 1996, *aff'd* 966 S.W.2d 467 (Tex. 1998)) A party may recover under the unjust enrichment theory when one has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment applies principles of restitution. *Burlington Northern R. Co.,* 925 S.W.2d at 97. Recovery under a quasi-contract theory, like unjust enrichment, however, is not available when an express contact governs the parties' dispute. *See Fortune Production Co.,* 52 S.W.3d at 685.

In their response, while Plaintiffs state that they are entitled to restitution under a theory

14

of unjust enrichment, Plaintiffs admit that this claim must be limited to what falls outside the subject matter of their contracts.  Plaintiffs suggest that the value of the capital improvements on the land falls outside the contract with FSB, and the value of the capital improvements and the value of the down payment fall outside the contracts with PPC.  Defendants do not dispute that these items were not covered by the agreements with the respective party. The Court will, therefore, limit this section of Plaintiffs' claims to recovery only for items falling *outside* the scope of the contracts.[6]

### 5. Constructive Trust

A constructive trust is an equitable remedy used to prevent unjust enrichment.  *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex. App. – Fort Worth 2002, no pet.).  To establish a constructive trust, the proponent must prove (1) breach of a special trust, fiduciary relationship or actual fraud (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable res. *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 859 (Tex.App. – Fort Worth 2005, ).  Defendants argue that Plaintiffs failed to plead a cause of action for fraud or unjust enrichment, and so this claim should be dismissed. Viewing the evidence in the light most favorable to Plaintiffs, as the Court must, the complaint properly states a claim for fraud and states facts that would show Defendants were unjustly enriched.

The court does note that a constructive trust is only available where the wrong cannot be addressed under other legal theories.  *See Jordan v. Hagler*, 179 S.W.3d 217, 220 (Tex. App. – Fort Worth 2005).  The court will therefore treat Plaintiff's pleading of a constructive trust as an alternative remedy to recovery of monetary damages.

---

[6]Because Plaintiffs have themselves limited this claim, they will not later be allowed to argue recovery under an unjust enrichment theory outside of what they stated in their responses.

6. Breach of Fiduciary Duty

Plaintiffs allege a cause of action for breach of fiduciary duty against FSB in regard to the sale of the farm.  A fiduciary relationship exists "where a special confidence is placed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one placing confidence." *American Medical Intern.*, 821 S.W.2d at 340. Under Texas law, the borrower-lender relationships are presumed to be arms length and no fiduciary relationship is implied.  *Tex. Bank &Trust Co. V. Moore*, 595 S.W.2d 502, 505 (Tex. 1980). Whether such a relationship exists is usually a question of fact for the jury.  *See Tuck v. Miller*, 483 S.W.2d 898, 905 (Tex. 1972).

Plaintiffs specifically pled that this case did not involve an arm's length transaction because of FSB's involvement in the running and management of the farm.  Texas courts have found a fiduciary relationship when there has been excessive lender control over, or influence in the borrower's business activities.  *Greater S.W. Office Park, Ltd. v. Texas Commerce Nat'l Bank*, 786 S.W.2d 386, 391 (Tex.App. – Houston [1st Dist.] 1990, writ denied).  Defendant FSB has been put on notice by Plaintiffs' pleading that this is the theory Plaintiffs are relying on in trying to prove this claim.  Plaintiffs may or may not face difficulty in prevailing in this cause of action.  However, they have properly pled the claim.

7.Conversion

Plaintiffs allege a conversion cause of action against PPC and FSB.  To prevail, Plaintiffs must show: (1) he owned or had legal possession of the property, (2) Defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, Plaintiff's rights as the owner, (3) Plaintiff demanded the

return of the property, and (4) Defendant refused to return the property.  *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.– Austin 2004, no pet.).

Plaintiffs pleadings state that Defendants PPC and FSB unlawfully exercised control over the equipment and personal property used in connection with the production of poultry on the farm.  These allegations, at a minimum, give Defendants notice of the property to which Plaintiffs are referring (farm equipment and personal property used to operate the farm) and also what the Plaintiffs are seeking to recover.

8. Tortious Interference with a Contract

Plaintiffs claim that Defendant FSB tortiously interfered with the contract involving Plaintiffs and PPC. Defendant FSB argues only that it cannot tortiously interfere with its own contract.  In Texas, party bringing suit for tortious interference with a contract must prove four elements: (1) a contract subject to interference exists (2) the act of interference was willful and intentional (3) the intentional act proximately caused the plaintiff's damage and (4) actual damage or loss occurred.  *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 665 (Tex. 1990).  Plaintiffs pled that a contract existed between Hiep Do and PPC and that FBC wilfully interfered with this contract.  Based on Plaintiffs' allegations, FSB was not a party to the contract between PPC and Plaintiffs.  Defendant FSB's argument that it cannot interfere with its own contract is not applicable.  The court will not dismiss the allegations on that ground.

## IV. Conclusion

Given the number and nature of Plaintiffs' claims, the court finds Plaintiffs pleadings to comply with Rule 8.  At this stage, the court must accept Plaintiffs' pleadings as true.  Defendants' contentions essentially involve whether or not Plaintiffs will be able to establish

particular facts in the pleadings.  While the court notes that Plaintiffs may have difficulty in

establishing some of these claims, the court will not dismiss the entire action at this time.  The

Court finds that only Julie Do's claim for breach of contract should be dismissed.  The Court

also recognizes that the Plaintiffs' unjust enrichment claim should be limited to those damages

arising outside of any existing contracts.

Plaintiffs filed a motion to strike the Truong Defendants' reply as untimely filed.

Because the court finds that the Truong Defendants motion should be denied, it does not reach

this issue.

IT IS THEREFORE ORDERED that Defendant Pilgrim's Pride Corporation's Motion to

Dismiss [Doc. # 24] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant Farmers State Bank's Motion to Dismiss is

[Doc. # 25] DENIED.

IT IS FURTHER ORDERED that the Truong Defendants' Motion to Dismiss [Doc. # 26]

is DENIED.

IT IS FURTHER ORDERED that Defendant Brimhall's Motion to Dismiss [Doc. # 28] is

DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike the Truong Defendants'

Reply [Doc. # 48] is DENIED as MOOT.

**SO ORDERED.**

**SIGNED** this the 9  day of **August, 2006.**

Thad Heartfield
United States District Judge
18